```
USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10-3-13
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

LIHUAN WANG,

                              Plaintiff,                          13 Civ. 218 (PKC)

              -against-                                           MEMORANDUM
                                                                  AND ORDER

PHOENIX SATELLITE TELEVISION US,
INC.,

                              Defendant.
-------------------------------------------------------x

P. KEVIN CASTEL, District Judge:

              Plaintiff Lihuan Wang brings this employment discrimination action against

defendant Phoenix Satellite Television US, Inc. ("Phoenix").  Invoking this Court's diversity

jurisdiction, she asserts only state law claims pursuant to the New York State Human Rights

Law, N.Y. Exec. L. § 290 et seq. ("NYSHRL") and the New York City Human Rights Law,

N.Y. City Admin. Code § 8-101 et seq. ("NYCHRL").  Ms. Wang, who was an unpaid intern at

the time, alleges that Phoenix bureau chief Zhengzhu Liu subjected her to a hostile work

environment, quid pro quo sexual harassment, and retaliation.  She also alleges that Phoenix

failed to hire her for full-time employment because of discriminatory animus on the part of Mr.

Liu.  Phoenix moves to dismiss Ms. Wang's Second Amended Complaint (the "SAC") pursuant

to Rule 12(b)(6), Fed. R. Civ. P.  (Docket # 21.)

              The Court concludes that because Ms. Wang was an unpaid intern, she may not

assert claims under the cited provisions of the NYSHRL and NYCHRL, except for her failure to

hire claims.  For reasons more fully explained below, Phoenix's motion to dismiss is GRANTED

with respect to Ms. Wang's hostile work environment claim, and DENIED with respect to her remaining claims.

BACKGROUND

The following facts are taken from the SAC and are assumed to be true for the purpose of deciding Phoenix's motions to dismiss. All reasonable inferences are drawn in favor of the plaintiff. See In re Elevator Antitrust Litig., 502 F.3d 47, 50–51 (2d Cir. 2007) (per curiam).

Defendant Phoenix is the American subsidiary for Phoenix Media Group, a Hong Kong-based media conglomerate that produces, inter alia, television news geared towards Chinese-language audiences. (SAC ¶ 6.) Phoenix maintains its headquarters in Los Angeles and has bureaus in New York City and Washington D.C. (Id.) During the period of alleged harassment, Zhengzhu Liu was the bureau chief of Phoenix's Washington D.C. bureau and supervised both the D.C. and New York City bureaus. (Id. ¶ 10.) In his capacity as bureau chief, Mr. Liu supervised the production of news programming and the other office functions of the New York City and D.C. bureaus. (Id. ¶ 11.) Mr. Liu also exercised authority over both the hiring and termination of Phoenix employees and interns, including conducting interviews and making hiring decisions. (Id.) Neither the New York nor D.C. bureau has a human resources department, and the hiring of employees and interns in those bureaus was within Mr. Liu's sole discretion. (Id. ¶¶ 10, 18.)

Plaintiff Ms. Wang, after interviewing with Mr. Liu, began an unpaid internship at Phoenix's New York bureau in December 2009. (Id. ¶¶ 4, 7, 14.) She learned about the internship from a Phoenix employee in Hong Kong. (Id. ¶ 7.) At that time, Ms. Wang was a twenty-two-year-old master's degree student in the Broadcast and Digital Journalism program at

Syracuse University.  (Id. ¶¶ 7–8.)  Wang asserts that the internship "was intended as an opportunity to provide Ms. Wang with training and serve as a potential basis for later employment with Phoenix."  (Id. ¶ 14.)  Ms. Wang's responsibilities as an intern included assisting the bureau's reporters with shooting news footage, drafting scripts, and editing video footage recorded in the field.  (Id. ¶ 15.)  Ms. Wang also reported daily to Mr. Liu via e-mail, submitting draft scripts and proposals for broadcast stories.  (Id.)  Although Phoenix had initiated a policy which disfavored permitting interns to appear on camera, Ms. Wang, within two weeks of beginning her internship, was proposing her own stories to Mr. Liu, scripting them, and appearing on camera to report those stories.  (Id. ¶ 16.)

Ms. Wang asserts that during the first two weeks of the internship, she "asked Mr. Liu about permanent employment with Phoenix, and Mr. Liu told Ms. Wang that she could obtain employment for the year following the expiration of her student visa, and perhaps beyond that year if she could obtain a work visa."  (Id. ¶ 19.)  Ms. Wang also discussed permanent employment with other Phoenix employees, including Yongyu Ji, a news correspondent, who informed her that Phoenix had previously sponsored employees to obtain work visas.  (Id. ¶¶ 15, 19–20.)  Ms. Wang alleges that after receiving a master's degree in journalism from a prestigious journalism program, she would have credentials similar or superior to those of the other reporters at Phoenix, but that the "most important criterion for a permanent position at Phoenix . . . was Mr. Liu's approval."  (Id. ¶¶ 8, 17, 18, 57.)

In January 2010, after Ms. Wang had been working as an intern for approximately two weeks, "Mr. Liu e-mailed everyone at the [New York] bureau to say that he was going to be in town and wanted to treat everyone to lunch."  (Id. ¶ 21.)  On January 11, 2010, Ms. Wang and a few other coworkers joined Mr. Liu for lunch at a Chinese restaurant.  (Id. ¶ 22.)  Ms. Wang

alleges that, after lunch, Mr. Liu asked Ms. Wang to stay so they could discuss Ms. Wang's job performance. (Id.) Ms. Wang, eager to discuss job possibilities, agreed, and her coworkers returned to work. (Id.) Mr. Liu then suggested that he and Ms. Wang go back to his hotel because he needed to drop off his belongings. (Id. at ¶ 23.) In the car ride to the hotel, Ms. Wang alleges that "Mr. Liu began telling Ms. Wang about a woman he knew who had dated a Black man and said that this man 'could have sex several times a night.'" (Id.) Mr. Liu "said that many women 'cannot handle the sex drives of Black men.'" (Id.) These comments made Ms. Wang "extremely uncomfortable." (Id.)

When they arrived at his hotel, the Hilton Hotel located at 1335 Avenue of the Americas, Mr. Liu suggested they go upstairs. (Id.) Ms. Wang then followed Mr. Liu upstairs to the floor of his hotel room, and Mr. Liu directed them to a quiet mini coffee bar with an isolated seating area. (Id. ¶ 24.) Mr. Liu and Ms. Wang were the only two people there. (Id.) Ms. Wang attempted to talk about her internship, but Mr. Liu was not responsive. (Id.) Instead, Mr. Liu "asked Ms. Wang to name her 'most beautiful feature,'" and told her, "'your eyes are so beautiful.'" (Id.) Mr. Liu then suggested that they go to his hotel room. (Id.) Although Ms. Wang felt uncomfortable, she felt compelled to go with Mr. Liu because he was her supervisor. (Id.) Once in his hotel room, Mr. Liu took off his shirt jacket and undid his tie. (Id. at ¶ 25.) Mr. Liu then "suddenly exclaimed, 'Why are you so beautiful?' and threw his arms around Ms. Wang." (Id.) Mr. Liu then held Ms. Wang tightly for roughly five seconds and tried to kiss Ms. Wang by force, but Ms. Wang turned her face away so Mr. Liu's mouth landed on her cheek and neck. (Id.) Mr. Liu then squeezed Ms. Wang's buttocks with his left hand. (Id.) Ms. Wang pushed Mr. Liu away and told him to stop, saying "I don't want this." (Id.) After Mr. Liu let go of Ms. Wang, Ms. Wang said, "I have to go," and then quickly left the room. (Id.)

Neither Ms. Wang nor Mr. Liu mentioned this incident afterwards. (Id. ¶ 26.) Upon returning to Washington D.C., Mr. Liu e-mailed Ms. Wang about work-related items as if nothing had happened. (Id.) Ms. Wang asserts that "[a]fter [she] rejected him . . . Mr. Liu no longer expressed interest in hiring her permanently after she completed her Master's . . . in December 2010." (Id. ¶ 27.) Instead, Mr. Liu began emphasizing that Phoenix could not sponsor Ms. Wang and that there was a "visa quota" that would prevent Phoenix from hiring her upon the expiration of her student visa, none of which had Mr. Liu mentioned during their previous discussions regarding Ms. Wang's potential permanent employment. (Id. ¶¶ 19, 27.) Ms. Wang completed her internship roughly one week later on or around January 17, 2010, and returned to her studies at Syracuse. (Id. ¶ 28.)

During the summer of 2010, Ms. Wang "contacted Mr. Liu about working at Phoenix when she graduated from the master's degree program in a few months." (Id. ¶ 29.) In response, "Mr. Liu asked her to go with him to Atlantic City for the weekend 'to discuss job opportunities.'" (Id.) Ms. Wang, fearful that Mr. Liu would sexually harass or sexually assault her again, told Mr. Liu she had other plans, and stopped attempting to gain employment with Phoenix. (Id. ¶¶ 29, 33.)

Ms. Wang alleges that she was unlawfully subjected to a hostile work environment by Phoenix through Mr. Liu's sexual advances. (Id. ¶ 48.) Ms. Wang further alleges that Phoenix discriminated against her on the basis of gender when Mr. Liu linked future employment opportunities to accession to his sexual demands, and then ceased offering future employment when those sexual demands were rejected, thereby denying Ms. Wang future employment with Phoenix. (Id. ¶¶ 55, 64, 74, 83.)

Ms. Wang is a citizen of the People's Republic of China. (Id. ¶ 1.) Phoenix is incorporated in Delaware and maintains its principal place of business in California. (Id. ¶¶ 1, 5.) Jurisdiction is based on diversity of citizenship. See 28 U.S.C. § 1332(a).

LEGAL STANDARD

Following the Supreme Court's decisions in Swierkiewicz v. Sorema N. A., 534 U.S. 506 (2002), Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Second Circuit has noted "[t]he pleading standard for employment discrimination complaints is somewhat of an open question in our circuit." Hedges v. Town of Madison, 456 Fed. App'x 22, 23 (2d Cir. 2012) (summary order); see also Schwab v. Smalls, 435 Fed. App'x 37, 40 (2d Cir. 2011) (summary order) (noting that "[q]uestions have been raised . . . as to Swierkiewicz's continued viability in light of Twombly and Iqbal," but not deciding the issue). Nonetheless, certain principles can be discerned.

To survive a motion to dismiss for failure to state a claim upon which relief can be granted, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). In assessing a complaint, courts draw all reasonable inferences in favor of the non-movant. See In re Elevator Antitrust Litig., 502 F.3d 47, 50–51 (2d Cir. 2007) (per curiam). Legal conclusions, however, are not entitled to any presumption of truth. Iqbal, 556 U.S. at 678. Instead, the court must examine the well-pleaded factual allegations, if any, "and then determine whether they plausibly give rise to an entitlement to relief." Id. at 679.

Although "an employment discrimination plaintiff need not plead a prima facie case of discrimination," Swierkiewicz, 534 U.S. at 515, she must satisfy the standards set out in Twombly and Iqbal. See Iqbal, 556 U.S. at 684 ("Our decision in Twombly expounded the

pleading standard for all civil actions and it applies to antitrust and discrimination suits alike."
(citation and quotation marks omitted)); Twombly, 550 U.S. at 569–70 (noting that plausibility
analysis does not require pleading a prima facie case and therefore does not run counter to
Swierkiewicz); cf. Hedges, 456 Fed. App'x at 23 (noting, without deciding, that "Swierkiewicz's
reliance on Conley suggests that, at a minimum, employment discrimination claims must meet
the standard of pleading set forth in Twombly and Iqbal, even if pleading a prima facie case is
not required").

DISCUSSION

I.    Plaintiff's Hostile Work Environment Claim Pursuant to the NYCHRL is
      Dismissed for Failure to State a Claim.

Phoenix moves to dismiss Ms. Wang's hostile work environment claim on the
grounds that Ms. Wang, as an unpaid intern, is not an employee within the ambit of the
NYCHRL.  Whether an unpaid intern may bring an employment discrimination claim pursuant
to the NYCHRL, as amended by the Local Civil Rights Restoration Act of 2005, N.Y.C. Local
Law No. 85 (2005) (the "Restoration Act"), appears to be an issue of first impression in the
Second Circuit and in the New York courts. See McCormick v. Int'l Ctr. for the Disabled, 2013
NY Slip Op 31063(U), 12 (Sup. Ct. N.Y. County 2013) (noting the absence of binding precedent
regarding whether an unpaid intern may bring a cause of action under the NYCHRL).  As this is
a diversity action, the Court must determine whether the New York courts would likely interpret
the NYCHRL to allow such a claim. See Guaranty Trust Co. v. York, 326 U.S. 99, 109 (1945)
("[T]he intent of [Erie] was to insure that, in all cases where a federal court is exercising
jurisdiction solely because of the diversity of citizenship of the parties, the outcome of the
litigation in the federal court should be substantially the same . . . as it would be if tried in a State
court.").  In New York, the starting point of analysis is "the plain meaning of the statutory

- 7 -

language, since it is the statutory text which is the clearest indicator of legislative intent."

Ragucci v. Prof'l Constr. Servs., 25 A.D.3d 43, 47 (2005) (internal quotations and citations

omitted).

       Section 8-107(1)(a) of the NYCHRL provides that "[i]t shall be an unlawful

discriminatory practice" for an "employer" to discriminate against "any person . . . in

compensation or in terms, conditions or privileges of employment." N.Y.C Admin. Code § 8-

107(1)(a). Ms. Wang does not argue that the statute's use of the word "person" means that Ms.

Wang need not be an employee to invoke the protections of the NYCHRL. As one New York

court has noted, "[t]his contention is insupportable under the express terms of the statute." Weir

v. Holland & Knight, LLP, 943 N.Y.S.2d 795 (Sup. Ct. N. Y. County 2011); see also Williams v.

Kuramo Capital Mgmt., LLC, 954 N.Y.S.2d 762 (Sup. Ct. Kings County 2012) ("Even though

the word person is used in [the NYSHRL and the NYCHRL], [the statutes] still only refer to an

employee because only employees can bring suit under [the NYSHRL] and N.Y.C. Admin. Code

§ 8-107(1)(a).") (citing Weir). The plain terms of § 8-107(1)(a) make clear that the provision's

coverage only extends to employees, for an "employer" logically cannot discriminate against a

person in the "conditions or privileges of employment" if no employment relationship exists.

Accordingly, Ms. Wang expressly acknowledges that she must be an employee of Phoenix to

assert an actionable hostile work environment claim under the NYCHRL. (Pl. Opp. Mem. of

Law at 5, Docket # 24.)

       Ms. Wang instead argues that she qualifies as an employee under the amended

NYCHRL, despite the fact that she is an unpaid intern. It is axiomatic in this Circuit that

compensation is a threshold issue in determining the existence of an employment relationship

under both Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and the

NYSHRL.  See O'Connor v. Davis, 126 F.3d 112, 115–16 (2d Cir. 1997) (holding that an

unpaid intern is not an "employee" under Title VII); Sweeney v. Bd. of Educ. of Rocky Point

Union Free Sch. Dist., 112 A.D.2d 240, 241 (2d Dep't 1985) (holding that the NYSHRL does

not extend protection to unpaid positions other than volunteer firemen, who are expressly

covered by the statute).  Had Ms. Wang, as an unpaid intern, brought her hostile work

environment claim pursuant to either of these civil-rights statutes, her claim would plainly be

foreclosed.  Ms. Wang concedes as much, but argues that, in light of the Restoration Act, "a

restrictive definition of employee rooted solely in federal law and dependent on compensation

should be abandoned as contrary to the statute's 'uniquely broad and remedial purposes.'"  (Pl.

Opp. Mem. of Law at 8 (quoting Bennett v. Health Mgmt. Sys., Inc., 92 A.D.3d 29, 34–35 (1st

Dep't 2011)).)  Ms. Wang accurately notes that, pursuant to the Restoration Act, "NYCHRL

claims must be analyzed separately from federal and state discrimination claims and that the

federal courts must construe 'the NYCHRL's provisions broadly in favor of discrimination

plaintiffs, to the extent that such a construction is reasonably possible.'"  (Id. at 5 (quoting

Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., 715 F.3d 102, 109 (2d Cir. 2013).)  Ms.

Wang thus insists that "the proper analysis is one that considers the other indicia of an

employment relationship under the preexisting test for NYCHRL claims—hire, power of

dismissal, and supervision and control of tasks performed—and balances those factors along

with whether the plaintiff was compensated."  (Id. at 8.)

        The Court disagrees.  This "preexisting test for NYCHRL claims" urged by Ms.

Wang was first utilized in State Div. of Human Rights on Complaint of Emrich v. GTE Corp.,

109 A.D.2d 1082, 1083 (4th Dep't 1985).  In that case, the Fourth Department annulled the State

Division of Human Rights' determination that GTE was not the petitioner's employer under the

NYSHRL:[1]

> In holding that GTE was not the employer of petitioner, the
> Division relied solely upon the facts that petitioner was carried on
> the payroll of the temporary employment agency and her wages
> and benefits were paid by the agency. The [NYSHRL] does not
> define the term "employer." Generally, four elements are
> considered in determining whether the relationship of employer
> and employee exists: "(1) the selection and engagement of the
> servant; (2) the payment of salary or wages; (3) the power of
> dismissal; and (4) the power of control of the servant's conduct
> . . . . The really essential element of the relationship is the right of
> control, that is, the right of one person, the master, to order and
> control another, the servant, in the performance of work by the
> latter." 36 NY Jur, Master and Servant, § 2. Despite the fact that
> petitioner was carried on the agency's payroll, GTE was her
> employer. GTE not only selected and hired the petitioner, but
> possessed and exercised the power of control, reserved the power
> of dismissal, and, indirectly, through the agency, paid her wages.
> GTE may not avoid its obligations under the Human Rights Law
> by the expediency of contracting with another for the payment of
> workers under its control.

Id. Numerous courts have since cited GTE Corp. and used this four-factor balancing test in

analyzing claims brought pursuant to the NYSHRL and the NYCHRL. See, e.g., Alie v.

NYNEX Corp., 158 F.R.D. 239, 246 (E.D.N.Y. 1994); Goyette v. DCA Adver. Inc., 830 F.

Supp. 737, 746 (S.D.N.Y. 1993); see also Germakian v. Kenny Int'l Corp., 151 A.D.2d 342, 343

(1st Dep't 1989) ("In State Division of Human Rights v. GTE Corporation, 109 A.D.2d 1082,

1083 (4th Dep't 1985), the Appellate Division outlined the elements of the relationship of

employer and employee."). However, Ms. Wang is unable to cite a single case—and the Court is

not aware of any—in which a court has applied this balancing test to the claims of an unpaid

intern. This is because this balancing test is used to determine whether a defendant is actually a

---

[1] Prior to the Restoration Act, New York federal and state courts routinely treated employment discrimination claims
brought pursuant to the NYSHRL as coextensive with claims brought pursuant to the NYCHRL. See Loeffler v.
Staten Island Univ. Hosp., 582 F.3d 268, 278 (2d Cir. 2009).

plaintiff's "employer" under the state and local civil rights laws, not whether a plaintiff may be considered an employee under those statutes in the first instance. See, e.g., Alie, 158 F.R.D. at 246 (applying balancing test because "an issue remains concerning whether [defendant] may be deemed plaintiff's employer within the meaning of the Human Rights Law") (emphasis omitted); Goyette, 830 F. Supp. 746 (applying balancing test to "determin[e] whether an entity may be considered an employer within the meaning of the Human Rights Law").

This point is well-illustrated by Robins v. Max Mara, U.S.A., Inc., 923 F. Supp. 460, 470 (S.D.N.Y. 1996), which is relied upon by Ms. Wang in her brief. (Pl. Opp. Mem. of Law at 8–9.) Ms. Wang suggests that Robins stands for the proposition that compensation is not a dispositive factor in determining the existence of an employment relationship under the NYCHRL. She argues that in Robins, the court "balance[ed] the factors for the NYCHRL standard, even when [a purported] employee was not compensated by the defendant." (Id.) This characterization of Robins, while technically accurate, is incomplete. It is true that the plaintiff in Robins was not compensated by one of the defendants, to wit, Fashion Group. Robins, 923 F. Supp. at 470–71. But the plaintiff was in fact compensated by another defendant, Max Mara USA. Id. Fashion Group thus argued that it should be dismissed as a defendant because Max Mara USA, not Fashion Group, was the plaintiff's "employer" under the NYSHRL. Id. at 470. To resolve this issue, the court applied the four-factor balancing test urged by Ms. Wang, but, as with the cases discussed above, the test was used to "determin[e] whether a defendant is actually the plaintiff's employer for the purpose of [the NYSHRL]." Id. In part because the plaintiff could not show that Fashion Group paid salary or wages to the plaintiff, the court, "[u]pon considering and balancing these factors . . . [could] not conclude that Fashion Group was [the plaintiff's] employer for the purpose of the [NYSHRL]." Id. at 471. Robins demonstrates that

this balancing test is appropriately used to determine whether a defendant is a plaintiff's

employer under the law, not, as urged by Ms. Wang, whether a plaintiff is actually an employee

under the law's protection.

That unpaid interns are not employees within the ambit of the NYCHRL is further

confirmed by analogous interpretations of Title VII and the NYSHRL.  The Court's analysis of

Ms. Wang's hostile work environment claim has thus far followed the Restoration Act's

admonition that "the provisions of [the NYCHRL] are to be construed independently from

similar or identical provisions of New York state or federal statutes."  N.Y.C. Local Law No. 85

§ 1 (2005); see also Loeffler v. Staten Island Univ. Hosp., 582 F.3d 268, 278 (2d Cir. 2009) ("As

a result of the Restoration Act, the [NYCHRL] now explicitly requires an independent liberal

construction analysis in all circumstances, even where state and federal civil rights laws have

comparable language.") (quoting Williams v. N.Y.C. Housing Auth., 61 A.D.3d 62, 66–69 (1st

Dep't 2009)).  Nevertheless, the Restoration Act also provides that "[i]nterpretations of New

York state or federal statutes with similar wording may be used to aid in interpretation of [the

NYCHRL]," so long as courts do not treat similarly worded provisions of those statutes as a

"ceiling above which the [NYCHRL] cannot rise."  N.Y.C. Local Law No. 85 § 1 (2005).  Even

after the passage of the Restoration Act, the New York Court of Appeals has stated "[w]e have

generally interpreted state and local civil rights statutes consistently with federal precedent where

the statutes are substantively and textually similar to their federal counterparts.  And we have

always strived to resolve federal and state employment discrimination claims consistently."

Zakrzewska v. New Sch., 14 N.Y.3d 469, 479 (2010) (internal quotations and citations omitted).

In O'Connor v. Davis, the Second Circuit analyzed whether an unpaid student

intern like Ms. Wang could qualify as an "employee" under Title VII.  126 F.3d 112, 115 (2d

Cir. 1997).  The parties, both at the district court and on appeal, argued this issue within the

framework of common-law agency principles, specifically the multi-factor test outlined in Cmty.

for Creative Non-Violence v. Reid, 490 U.S. 730, 751 (1989).  In holding that O'Connor was not

an employee under Title VII, the Second Circuit rejected the parties' application of this multi-

factor test:

> [W]e think that this analysis is flawed because it ignores the
> antecedent question of whether O'Connor was hired by Rockland
> for any purpose.  As the Supreme Court suggests, the common
> feature shared by both the employee and the independent
> contractor is that they are hired parties, and thus, a prerequisite to
> considering whether an individual is one or the other under
> common-law agency principles is that the individual have been
> hired in the first instance.  That is, only where a "hire" has
> occurred should the common-law agency analysis be undertaken.
>
> . . . .
>
> Where no financial benefit is obtained by the purported employee
> from the employer, no plausible employment relationship of any
> sort can be said to exist because although compensation by the
> putative employer to the putative employee in exchange for his
> services is not a sufficient condition, it is an essential condition to
> the existence of an employer-employee relationship.

O'Connor, 126 F.3d at 115–16 (citations omitted).  The Second Circuit thus concluded that "the

preliminary question of remuneration is dispositive in this case," and that O'Connor's

discrimination claim must fail because of the uncontested absence of remuneration.  Id. at 116.

Since O'Connor was decided, courts have engaged in a two-step process in

determining whether a plaintiff is an employee under the protection of Title VII:  "[f]irst, the

plaintiff must show she was hired by the putative employer.  To prove that she was hired, she

must establish that she received remuneration in some form for her work. . . .  Once plaintiff

furnishes proof that her putative employer remunerated her for services she performed, we look

to the thirteen factors articulated by the Supreme Court in [Reid] to determine whether an

- 13 -

employment relationship exists." United States v. City of New York, 359 F.3d 83, 91–92 (2d

Cir. 2004) (citing O'Connor, 126 F.3d at 115) (internal quotations and citations omitted).  In

sum, remuneration is a threshold inquiry in establishing the existence of an employment

relationship.

This analysis is equally applicable to Ms. Wang's hostile work environment claim

under the NYCHRL.  The four-factor balancing test urged by Ms. Wang is "nearly identical" to

the multi-factor common-law agency test in Reid.  Compare Conde v. Sisley Cosmetics USA,

Inc., No. 11 Civ. 4010 (RJS), 2012 WL 1883508, at *2 n.3 (S.D.N.Y. May 23, 2012) with Reid

490 U.S. at 751.  Application of the four-factor test, like application of Reid, is only appropriate

once a plaintiff has, in the first instance, demonstrated the existence of the "essential condition"

of remuneration.  See O'Connor, 126 F.3d at 116.  Because it is uncontested that Ms. Wang

received no remuneration for her services, application of the four-factor test urged by Ms. Wang

is inappropriate, and Ms. Wang's hostile work environment claim must fail.

Finally, the legislative history of the NYCHRL further confirms that unpaid

interns are not employees under the NYCHRL.  Since the enactment of the NYCHRL, the New

York City Council has frequently amended the statute in order "ensure protection of the civil

rights of all persons covered by the law."  See, e.g., N.Y.C. Local Law No. 85 § 1 (2005).  For

example, in 1991, the City Council instituted a series of "fundamental amendments" to the

statute which expanded coverage, limited exemptions, broadened remedies, and created a private

right of action.  Williams, 61 A.D.3d at 68; see N.Y.C. Local Law No. 39 (1991).  The

Restoration Act of 2005 further amended the statute to fulfill its broad remedial purpose by

expressly instructing courts to interpret the NYCHRL independently from, and more liberally

than, its federal and state counterparts.  N.Y.C. Local Law No. 85 § 1 (2005).  None of these

amendments, however, altered the NYCHRL to add a provision extending coverage to unpaid

interns or volunteers.  This is particularly telling in light of the fact that it has long been

"axiomatic that in order for one to be held liable for employment discrimination under New York

law, there must have existed between the parties, at the time of the action complained of, the

relationship of employer and actual or prospective employee, the touchstone of which is

mutually beneficial economic substance."  18 N.Y. Jur. 2d Civil Rights § 48 (2013) (citing

Sweeney v. Bd. of Educ. of Rocky Point Union Free Sch. Dist., 112 A.D.2d 240 (2d Dep't

1985); State Div. of Human Rights v. Bd. of Co-op. Educ. Servs., 98 A.D.2d 958 (4th Dep't

1983)).

　　　　　For example, in 1985, the Second Department held that the NYSHRL does not

extend coverage to unpaid volunteers:

> The protection of [the NYSHRL] does not extend to petitioner's
> unpaid, voluntary relationship with respondent's school which
> lacked "the mutually beneficial economic substance which is the
> touchstone of an employer/employee relationship" State Div. of
> Human Rights v. Board of Coop. Educ. Servs., 98 AD2d 958 (4th
> Dep't 1983).
>
> While [the NYSHRL] does expressly cover volunteer firemen, the
> Legislature's failure to include other voluntary, unpaid positions
> evidences its intent not to extend the protection of the statute to all
> voluntary positions.

Sweeney, 112 A.D.2d at 241 (citations omitted).  At the time of the 1991 amendments, the New

York City Council was presumably aware of this six-year-old precedent, as well as the fact that

courts then treated employment discrimination claims brought pursuant to the NYSHRL and the

NYCHRL as coextensive.  See Loeffler, 582 F.3d at 278.  The City Council's decision in 1991 to

fundamentally amend the NYCHRL, while not explicitly extending coverage to unpaid interns or

volunteers, evinces the City Council's intention that the NYCHRL's protection not extend to

unpaid positions. See N.Y. Stat. Law § 74 (McKinney 2013) ("A court cannot by implication supply in a statute a provision which it is reasonable to suppose the Legislature intended intentionally to omit; and the failure of the Legislature to include a matter within the scope of an act may be construed as an indication that its exclusion was intended."). The same holds true for subsequent amendments which failed to extend the NYCHRL's coverage to unpaid interns, despite the fact that courts continued to treat remuneration as the "touchstone" of an employer-employee relationship. See Kent v. Papert Cos., 309 A.D.2d 234, 247–48 (1st Dep't 2003) ("Moreover, PCI and the Paperts cannot be held liable for Landon's decision not to hire plaintiff because they were not her 'employer' under the [NYSHRL] or [the NYCHRL], which require the existence of an actual or prospective relationship of employer and employee. The touchstone of such a relationship is 'mutually beneficial economic substance.'") (quoting State Div. of Human Rights, 98 A.D.2d at 958); see also O'Connor, 126 F.3d at 116.

In sum, the plain meaning of the NYCHRL, the case law, interpretations of analogous wording in Title VII and the NYSHRL, as well as the legislative history of the NYCHRL all confirm that the NYCHRL's protection of employees does not extend to unpaid interns. Ms. Wang's hostile work environment claim under the NYCHRL, which requires her to be an employee, is therefore dismissed.

II.    Phoenix's Motion to Dismiss is Denied with Respect to Ms. Wang's Remaining Claims.

Phoenix moves to dismiss Ms. Wang's remaining failure to hire claims under the NYSHRL and NYCHRL on the grounds that she has failed to allege both that a permanent position was available and, that she applied for the position in question. Claims under the NYSHRL are analyzed under the same standards as claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et. seq. Mittl v. N.Y. State Div. of Human Rights, 100 N.Y.2d

326, 330 (2003). In order to sustain a claim for failure to hire, a plaintiff must allege that she

applied for an available position for which she was qualified and was rejected under

circumstances giving rise to an inference of unlawful discrimination. See Tex. Dep't of Cmty.

Affairs v. Burdine, 450 U.S. 248, 253 (1981). Phoenix does not claim that the complaint is

insufficient regarding Ms. Wang's qualifications, or that Ms. Wang was rejected under

circumstances giving rise to an inference of unlawful discrimination.

For a failure to hire claim to withstand a motion to dismiss, a plaintiff must allege

specific positions to which she applied and was rejected. See Brown v. Coach Stores, Inc., 163

F.3d 706, 710 (2d Cir. 1998). To qualify as an application, a plaintiff's actions must be more

than a general request for employment. (See id.) This does not require, however, that a plaintiff

must always allege a formal application, though the exception is narrow. To be excused from the

specific application requirement, a plaintiff must show "that (1) the vacancy at issue was not

posted, and (2) the employee either had (a) no knowledge of the vacancy before it was filled or

(b) attempted to apply for it through informal procedures endorsed by the employer." Petrosino

v. Bell Atlantic, 385 F.3d 210, 227 (2d Cir. 2004). When an applicant is unaware of open

positions because an employer does not post vacancies, it is sufficient for a plaintiff to express

interest in a particular class of positions. Williams v. R.H. Donnelley Corp., 368 F.3d 123, 129

(2d Cir. 2004); Mauro v. S. New England Telecomms., Inc., 208 F.3d 384, 387 (2d Cir. 2000).

Here, accepting the amended complaint's factual allegations as true and drawing all

reasonable inferences in Ms. Wang's favor, the complaint plausibly gives rise to an inference

that there was an unposted vacancy, and that Ms. Wang attempted to apply for the vacancy

through informal procedures.

First, the complaint suggests that vacancies at Phoenix's New York office were not posted and that Ms. Wang expressed interest in a particular class of position. Ms. Wang alleges that she was led to believe that her internship would "serve as a potential basis for later employment" and had been told that she could obtain employment for the year following the expiration of her student visa, and perhaps afterwards. (SAC ¶¶ 14, 19.) She discussed permanent employment with other reporters, and investigated Phoenix's visa sponsorship policies. (Id. ¶¶ 19–20.) At all times, Ms. Wang's actions indicate interest for a single class of position, that of a full-time reporter. (See id. ¶¶ 17, 19–20.) In addition, statements and conduct by Mr. Liu, the bureau chief, indicated that such a position may be made available to Ms. Wang; during the course of her internship, he spoke with her about permanent employment opportunities. (See id. ¶¶ 11, 19.) Later, when Ms. Wang later called asking about employment, Mr. Liu, rather than informing her there was no position, invited her to Atlantic City for the weekend to discuss "job opportunities." (Id. ¶ 29.) Therefore, it may properly be inferred that unposted job opportunities, including a reporter position, may have been available.

In its reply brief, Phoenix cites to a number of cases in which a failure to hire case was dismissed when the complaint did not specify a position. (Def. Reply Mem. of Law at 6–7, Docket # 25.) Those cases are, however, distinguishable from the situation here. In the cited cases, the complaint either (1) failed to include necessary facts constituting fair notice of the specific charges of discrimination at issue, and the acts or conduct giving rise to those charges, e.g Whyte v. Contemporary Guidance Servs., Inc., No. 03 CV 5544 (GBD), 2004 WL 1497560, at *2–3 (S.D.N.Y. July 2, 2004) (dismissing a complaint that merely alleged a "policy" of discrimination); Johnson v. City Univ. of N.Y., No. 00 CIV. 4964 WK RLE, 2002 WL 1750841, at *4 (S.D.N.Y. July 24, 2002) (dismissing a claim where the plaintiff conceded there were no

open positions at the time of the alleged discrimination but he "felt" there were positions available); or (2) concerned positions that had been eliminated or never created, e.g., Zito v. Fried, Frank, Harris, Shriver, & Jacobson, LLP, 869 F. Supp. 2d 378, 399 (S.D.N.Y. 2012) (dismissing a claim where the duties of the position at issue had been redistributed to other employees); Bernstein v. MONY Group, Inc., 228 F. Supp. 2d 415, 419 (S.D.N.Y. 2002) (dismissing a claim where the plaintiff conceded that no position was ever created).  Neither situation applies here.  In her complaint, Ms. Wang specifically details the class of position sought, facts giving rise to an inference that such a position was available, and the conduct giving rise to a charge of discrimination.  (See SAC ¶¶ 14, 19, 27, 29.).

Second, Ms. Wang's allegations allege an informal hiring process at Phoenix and that Ms. Wang attempted to apply for a position using informal procedures.  The entire hiring process in the New York office was in the sole discretion of Mr. Liu.  (Id. ¶¶ 18.)  Phoenix did not have a human resources department in the New York office, nor were there any officers in the United States who supervised Mr. Liu.  (Id. ¶ 10.)  When Ms. Wang contacted Mr. Liu about permanent employment, Mr. Liu's response was to invite her to Atlantic City for the weekend, rather than to solicit a formal application.  (See id. ¶ 29.)  Furthermore, it may be inferred that Ms. Wang received her earlier internship at Phoenix through an informal hiring process.  She learned about the internship from a Phoenix employee in Hong Kong and interviewed for the position with Mr. Liu, who made the decision to hire her.  (See id. ¶¶ 7, 11, 14.)  Ms. Wang's prior experience at Phoenix and Mr. Liu's subsequent behavior give rise to the inference that Phoenix followed informal hiring procedures in their New York office, and that Ms. Wang's actions were an attempt to apply for a position using these informal procedures.

- 19 -

Therefore, the complaint plausibly alleges that Ms. Wang attempted to apply for an unposted vacancy through informal procedures.  As such, the complaint is sufficient to sustain a claim under the NYSHRL.

Ms. Wang's complaint is also sufficient to sustain a claim under the NYCHRL.  Under the Restoration Act of 2005, courts must interpret the NYCHRL independently from its state counterpart.  N.Y.C. Local Law No. 85 § 1 (2005).  With regards to the NYCHRL, the NYSHRL represents a "a floor below which the City's Human Rights law cannot fall."  Id.  Therefore, claims found sufficient under the NYSHRL necessarily must survive under the NYCHRL.

The Court concludes that Ms. Wang has plausibly alleged that that she applied for an available position for which she was qualified and was rejected under circumstances giving rise to an inference of unlawful discrimination, and thus, Phoenix's motion to dismiss with respect to the remaining failure to hire claims is denied.

## CONCLUSION

For the foregoing reasons, Phoenix's motion to dismiss is GRANTED with respect to Ms. Wang's hostile work environment claim, and DENIED with respect to her remaining claims.


SO ORDERED.

P. Kevin Castel
United States District Judge


Dated:  New York, New York
        October 3, 2013